*W. C. Kocher*, for appellee.

———————————•———————————

Cunningham *v.* Clark, Receiver of the Bank of the Capitol.

Free Bank—Forfeiture of Charter.—A free bank organized under the act of *May* 28, 1852, failing to comply with the provisions of the act of *March* 3, 1855, (1 G. & H. 124,) did not lose its corporate existence, for all purposes, when the latter act came into force; but under section 48 of that act, its charter would not expire until *March* 1, 1857, and under section 6, 1 R. S. 1852, p. 240, the bank would have three years from that date to sue and be sued, and to settle, dispose of and convey its property, and divide the capital stock, but not to continue a banking business.

APPEAL from the *Marion* Circuit Court.

Gregory, J.——*Clark*, as receiver of the property of the *Bank of the Capitol*, sued *John W. Dodd, Nathaniel F. Cunningham, Charles F. Allen* and *William J. Wallace,* for the wrongful conversion of an *iron safe, counter and fixtures, and a desk*, alleged to be of the aggregate value of 1820 dollars. *Dodd, Cunningham* and *Wallace*, disclaimed all interest in the property; that the property was not in their possession; that they never had or held the same in their own right; that it was placed in the office of the Auditor and Treasurer of State by *Aquilla Jones*, former treasurer, as the property of the State of Indiana, and formed a part of the furniture and fixtures in said offices, and that, at the close of the respective terms, of *Dodd* and *Cunningham*, the same was left by them in the said offices, and was by them turned over as the prop-

erty of the state to their successors in office, and that the said property still remains in the custody of their successors.

The appellee moved to strike out this disclaimer. The court below took no action thereon.

The defendants below filed their answer in two paragraphs: first, general denial; second, property in the State of Indiana. Reply to second paragraph, general denial. The death of *Allen* was suggested, and the suit as to him abated. Trial by the court; finding for the defendants, *Dodd and Wallace*, and for the plaintiff against the defendant *Cunningham* for 2000 dollars. A motion by appellant for a new trial was overruled, and he excepted. The evidence is in the record.

The entries in the order book, and not the complete record, of the case of *John W. Hamilton*, administrator, &c., against *The Bank of the Capitol, John Wooley, Isaac Coffin* and *Michael Fitzgibbon*, under which *Clark* claims to act, were introduced in evidence. From these entries, it appears that the judgment was rendered on the 3d of *July*, 1858, and the plaintiff appointed receiver, &c., on the 7th of *December* following.

It is said by counsel, that an assignment made to the defendants, *Coffin* and *Fitzgibbon*, was set aside as being fraudulent on its face. That could only be made to appear by the introduction in evidence of the papers constituting, under the statute, the complete record. Without the complaint, it is impossible to know what assignment was so set aside.

The evidence shows that *The Bank of the Capitol* was a free bank, organized under the act of *May* 28, 1852, authorizing and regulating the business of general banking; that it did not comply with the requirements of the act of *March* 3, 1855, (1 G. & H. 124) ; that the bank owed the state some 5000 dollars for money on deposit; that the state took the property in controversy at 2000 dollars, and gave the bank credit for that sum ; that this arrangement was made with *Wooley*, the president of the bank, *Fitzgibbon* and

*Coffin*, on the 25th of *March*, 1858; that the property was moved to the state offices; that afterward, on the 25th of *June*, 1859, *Wallace*, as sheriff, sold the property on an execution issued on a judgment in favor of *Allen*, rendered on the 12th of *January*, 1859, and *Palmer*, the deputy auditor, bought it in at 623 dollars and 67 cents, for the state.

On the 5th of *July*, 1859, *Clark* demanded the property of defendants *Cunningham* and *Dodd;* the former said it was in his custody as the property of the state; that it had been bought by *Mr. Jones* for the use of the state, and declined giving it up. The property was then, and still is, in the treasurer's office.

There are two questions made in argument. It is contended by the counsel for the appellant: first, that he is not liable for the wrongful *conversion* of the property under the facts of the case; second, that the evidence shows that the property is the property of the state.

We will examine the latter question only, as that disposes of the case, and renders a decision of the former unnecessary.

It is claimed by the counsel for the appellee, that at the time of the purchase by the state there was no bank in existence, and that *Wooley's* powers terminated with the existence of the corporation. The case of *Wilson* v. *Tesson et al.* 12 Ind. 285, is cited in support of the proposition that the bank had ceased to be a corporation, but the question now before the court was not involved in that case. PERKINS, J., in delivering the opinion of the court, says: "*The Bank of the Capitol* having failed to comply with the requirements of the act of 1855, had no power to do *general banking business in its corporate capacity*, after it came into force."

By the provisions of the act of 1855, the bank did not cease to be a corporation for all purposes. The 48th section reads thus: Every bank or banking association, organized under the provisions of the general banking law of this

state, may, in case it shall immediately after the passage of this act pay all its circulating notes in coin, upon demand, have until the *first day of March*, 1857, *to wind up, or accept the provisions of this act.*" Under this section, the bank continued to be a corporation, for the double purpose of winding up *and accepting the provisions of that act.*

The general law respecting corporations provides that "All corporations whose charters shall expire by limitation, forfeiture or otherwise, shall nevertheless be continued bodies corporate for three years, after the time they would have been so dissolved, for the purpose of prosecuting and defending suits, to which they are a party, and to enable them to settle, dispose of and convey their property, and divide the capital stock, but not to continue the business for which such corporations were established." 1 R. S. 1852, § 6, p. 240.

"At common law, upon the civil death of a corporation, all its real estate remaining unsold reverts to the grantor and his heirs; for the reversion, in such an event, is a condition annexed by the law, inasmuch as the cause of the grant has failed. The personal estate in *England* vests in the king; and in our own country in the people, or state, as succeeding to this right and prerogative of the crown. The debts due to and from it are totally extinguished; so that neither the members nor directors of the corporation can recover or be charged with them in their natural capacities." Angell & Ames on Corporations, ch. 22, § 6, (3d ed.,) and the authorities there cited.

If the position assumed by the counsel for the appellee is correct, we cannot see by what right *Hamilton*, as administrator of *Morrison*, recovered his judgment against the corporation on the 3d of *July*, 1858, long after the time limited by the act of 1855 for the bank to wind up.

But we think that these two statutes should stand and have their full force; that the charter of *The Bank of the Capitol* did not expire, within the meaning of the general law respecting corporations, until *March* 1, 1857, and that

the bank had three years from that time to sue and be sued, to settle, dispose of and convey its property, and divide the capital stock, but not to continue the business for which it was established. We are not inclined to follow the case of *Wilson* v. *Tesson et al., supra,* further than the point ruled, and as this is not in conflict with this opinion, we shall express no opinion as to the propriety of overruling that case.

With this view of the law, we have no difficulty in determining that the property in controversy was in the state, and that a new trial ought to have been granted.

The judgment is reversed, and the cause remanded to said court, with directions to award a new trial, and for further proceedings.

*Oscar B. Hord,* Attorney General, and *McDonald & Roache,* for appellant

*H. C. Newcomb* and *B. K. Elliott,* for appellee.