CONWELL, President of the Bank of Connersville, *v.* PATTISON.

FREE BANKS—EXPIRATION OF CHARTER.—When a bank organized under the general banking law of 1852 (1 R. S. 152) failed to conform to the requirements of the amended law of 1855, and having before failed to redeem its circulating notes in coin, did not afterwards resume payment, it ceased, under the latter law, to have any corporate existence. But under section 6 of the general law respecting corporations (1 G. & H. 269), its corporate existence was continued for three years, for the purpose only of winding up its business.

SAME—EXTINGUISHMENT OF CLAIMS UNCOLLECTED.—No application hav-
ing been made to the Circuit Court for the appointment of a receiver, and
an extension of the time for collecting the debts due the bank, such debts
are, at the expiration of said three years, totally extinguished.

APPEAL from the *Marion* Common Pleas.

ELLIOTT, J.—In this case *Abraham B. Conwell*, as presi-
dent of *The Bank of Connersville*, and for the use of the
bank, on the 12th of *May*, 1866, instituted suit against the
appellee, as the indorser of two bills of exchange, which
are as follows, viz :

"Exchange for $1,500.
              "*Connersville, Ind.*, *May* 14th, 1853.
"Ninety days after date pay to the order of *George G.
Shoup*, at *Savings Bank of Cincinnati*, fifteen hundred dol-
lars, value received.
                          "T. T. N. PATTISON.
"To *Shoup, Cullum & Co.*"

"Exchange for $3,000.
              "*Connersville, Ind.*, *June* 6th, 1853.
"Sixty days after date pay to the order of *George G.
Shoup*, at *The Savings Bank of Cincinnati, Ohio*, three thou-
sand dollars, value received, and place the same to the ac-
count of,
              "Respectfully,
                          "T. T. N. PATTISON.
"To Messrs. *Shoup, Cullum & Co., Cincinnati, Ohio.*"

These bills were duly accepted by *Shoup, Cullum & Co.*,
and, the complaint alleges, were afterwards, and before ma-
turity, indorsed by *George G. Shoup*, the payee thereof, and
by the defendant, *Edward W. Pattison*, for a valuable con-
sideration, to said *Bank of Connersville;* that they were pre-
sented for payment at maturity, at *The Savings Bank of Cin-
cinnati, Ohio*, and payment thereof refused; that they were
thereupon protested for non-payment, and notice of said

protest and non-payment duly given to the drawer and indorsers thereof. It is further alleged that the firm of *Shoup, Cullum & Co.* was composed of *George G. Shoup,* who is deceased, *R. H. Cullum,* who is not sued in this action, and the defendant, *Edward W. Pattison.*

On the 8th of *June,* 1866, a demurrer to the complaint was filed by the defendant, which the court overruled. On the 26th of *June,* 1866, the defendant filed an answer in bar, consisting of three paragraphs, on which issues were subsequently formed. At the *February* term, 1867, of said court, the defendant, by leave of the court, filed an additional paragraph to his answer, which, in substance, alleges that said *Bank of Connersville* was organized under the general banking law of the State of *Indiana,* approved *May* 28th, 1852; that said bank, about the 1st of *January,* 1855, failed to redeem its notes in circulation, and went into liquidation, and that in *May,* 1855, the bonds and securities deposited with the Auditor of State were sold by said Auditor, under the law, in *New York,* to redeem the circulation of said bank, and said bank wholly ceased to do a banking business, and failed and refused to comply with the requirements of the act of the general assembly of the State of *Indiana,* approved *March* 3d, 1855, and thereby forfeited its corporate power to do a general banking business, and that the time fixed by law for such banks to wind up their business expired on the 1st of *March,* 1857, at which time said bank ceased to exist for any purpose whatever, and had no legal capacity thenceforward to sue or be sued, or to transact any business whatever, having forfeited its charter and all powers under it. Wherefore the defendant says that *Abraham B. Conwell,* as president of said bank, has no legal capacity whatever to maintain this suit, in behalf of, or for the use of said bank, for the reason that, at the time of the commencement of said suit, said bank had no legal existence. Wherefore they claim judgment for costs. Reply in denial. The issues in the case, by agreement of the parties, were tried by the court with-

out a jury. The court made a general finding for the de-ant. Motion for a new trial overruled, and judgment on the finding.

It is claimed by the appellant's counsel that the finding of the court was based alone on the issue under the fourth paragraph of the answer, the court finding that paragraph true; and that, for the reason therein stated, under the law, said *Bank of Connersville* had no legal existence at the time of the commencement of said suit. As before stated, the court found generally " for the defendant," and it is insisted by the appellee's counsel that the finding is sustained by the evidence under the other issues in the case, as well as upon that presented by the fourth paragraph of the answer. The evidence is before us, and clearly proves the facts alleged in the fourth paragraph of the answer, and hence, if the facts as stated in that paragraph constitute a valid defense to the action, it will be unnecessary for us to examine the questions raised by the other issues. It appears by the evidence that *The Bank of Connersville* was organized in 1852, under the general banking law of this State, approved *May* 28th, 1852. 1 Rev. Stat. 1852, p. 152. In *October*, 1854, the bank refused to pay its circulating notes in specie, and soon afterwards a portion of said notes were duly protested for non-payment, and notice thereof given to the Auditor of State, as required by said act. In *May*, 1855, the bonds deposited by the bank with the Auditor of State to secure its circulation were sold by that officer in *New York*, and the proceeds applied to the redemption of the notes issued by, and outstanding against, the bank. After the refusal to redeem its notes in specie in *October*, 1854, the bank ceased to transact the general business of banking, but continued to collect the debts due, dispose of its assets, and apply the proceeds to the payment of its liabilities, for the purpose of closing up its concerns.

By the thirty-second section of the act under which the bank was organized, the legislature reserved the power, at any time, to alter or repeal said act. In 1855, under the

title of "an act to amend an act to authorize and regulate the business of general banking," the legislature enacted a new law on that subject, in many respects materially different from that of 1852; the fifty-third section of which provides that "all laws and parts of laws conflicting with this act are hereby repealed." Section six of the act of 1855 requires the deposit and transfer to the Treasurer of State of stocks or bonds of the value of one hundred and ten dollars as a security for the redemption of each one hundred dollars of circulating notes furnished by the Auditor to the bank. And section forty-eight provides that "every bank or banking association organized under the provisions of the general banking law of this State may, in case it shall immediately after the passage of this act pay all its circulating notes in coin, upon demand, have until the 1st day of *March,* 1857, to wind up or accept the provisions of this act; provided that the Auditor shall in no case issue any circulating notes to any bank until it shall have fully complied with the provisions of this act; and provided further, that if any bank shall fail to pay its circulating notes in coin, it shall be wound up and closed by the Auditor, pursuant to the provisions of this act."

We held, in *Cunningham* v. *Clark, Receiver of the Bank of the Capitol,* 24 Ind. 7, that, under the act of 1855, that bank continued to exist as a corporation until the 1st of *March,* 1857, for the double purpose of winding up and accepting the provisions of said act. But, in the case now under consideration, *The Bank of Connersville* did not pay any of its notes in coin after the passage of the act of 1855. It had suspended payment of its notes in coin before the passage of that act, and never resumed such payment afterwards; and it was therefore the duty of the Auditor to proceed immediately to wind it up. It may be conceded that it was not intended by the act of 1855 that the Auditor should take charge of and close up the general business and affairs of the bank, but only to require him, when the bank should

fail to pay its circulating notes in coin, to wind it up by selling the bonds deposited for that purpose, and redeeming therewith the circulating notes issued by the bank. The failure of the bank to comply with the act of 1855, by pay-ing its circulating notes in coin, left it without any cor-porate powers whatever, and appropriated the stocks and bonds deposited with the Auditor to the redemption of the notes issued by the bank. In all other respects, looking to that act alone, the law of its creation was repealed, and it ceased to exist. *Wilson* v. *Tesson*, 12 Ind. 285. But the sixth section of the general law respecting corporations provides that " all corporations whose charters shall expire by limitation, forfeiture, or otherwise, shall, nevertheless, be continued bodies corporate for three years after the time they would have been so dissolved, for the purpose of pro-secuting and defending suits to which they are a party, and to enable them to settle, dispose of and convey their pro-perty and divide the capital stock, but not to continue the business for which such corporations were established." 1 G. & H. 269. Under this statute, *The Bank of Connersville* had three years after the 3d of *March*, 1855, to collect the debts due it and wind up all its business. If the three years thus allowed for that purpose should be found not sufficient to properly wind up the concerns of the corporation, the time may be extended, under section twelve of the same act, up-on application to the Circuit Court of the county in which the corporation has its principal place of business, within said period of three years, by any creditor, stockholder or member of such corporation, for the appointment of a re-ceiver or trustee. In the case at bar, no such receiver or trustee was appointed, and the corporation, therefore, ceased to exist for any purpose whatever, after the 3d of *March*, 1858, more than eight years before the commencement of this suit. The appellant, however, insists that the fourth paragraph is an answer in abatement only, and that it could not be filed at a term subsequent to that at which the issues on the merits were made up. In *Thompson* v. *Greenwood*,

*ante*, p. 327, after a very careful consideration of the question, we held that every matter of defense, whether in abatement or in bar of the action, might be included in the same answer, under the code. If all such defenses may be included in the same answer, it cannot be material as to the order in which they are stated in the answer. Here there is but one answer, consisting, however, of four paragraphs, each stating a distinct ground of defense. The fourth paragraph was filed by leave of the court, and issue was taken upon it without objection by the plaintiff. It is, in form, in abatement, but the facts alleged, we think, go to the merits, and constitute a bar to the action. A plea in abatement alleging the disability of the plaintiff to sue, ordinarily, does not deny that a right of action exists in some one, but only denies the right of the plaintiff to sue. It is therefore called a dilatory plea, and is not favored in law. But here the complaint alleges that the bills of exchange were made and negotiated by the bank. They were, therefore, the choses in action of the bank, and the fourth paragraph of the answer shows that the bank had ceased to exist as a corporation, for any purpose whatever, long prior to the commencement of the suit. At common law, upon the civil death of a corporation, "the debts due to and from it are totally extinguished; so that neither the members nor directors can recover or be charged with them in their natural capacities." *Cunningham* v. *Clark, Receiver, &c.*, 24 Ind. 7, and authorities there cited.

The statute to which we have referred continued the corporate existence of the bank, for the purpose of collecting its dues and winding up its business, for the period of three years, at the expiration of which it ceased to exist for any purpose, and at that time the debts remaining due to it were "totally extinguished." The facts stated in the fourth paragraph of the answer, therefore, show that the right of action on the bills was extinguished, and did not exist in any person. The defense thus set up is as clearly in bar of the action as an answer setting up the statute of limitations.

We think the fourth paragraph of the answer was well pleaded; that it contained a valid defense to the action, and was sustained by the evidence, and the judgment must therefore be affirmed.

The judgment is affirmed, with costs.

*J. T. Dye* and *A. C. Harris*, for appellant.

*W. Morrow, R. M. Goodwin* and *W. H. Hay*, for appellee.